**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALAN KARPAS, <br><br> Plaintiff, <br><br> v. <br><br> TRIMARK SPORTSWEAR GROUP (U.S.) LTD., <br><br> Defendants. | CIVIL ACTION NO. 04-5458 (DRD) <br><br> **O P I N I O N** |

Lawrence J. McDermott, Jr., Esq.
PRESSLER AND PRESSLER
16 Wing Drive
Livingston, NJ 07927

   *Attorneys for Plaintiff*

Marc D. Haefner, Esq.
CONNELL FOLEY, LLP
85 Livingston Avenue
Roseland, NJ 07068-1765

David Lurie, Esq.
LURIE & KRUPP, LLP
One McKinley Square
Boston, Massachusetts 02109
(617) 367-1970

   *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

The Defendant, Trimark Sportswear Group (U.S.) Ltd., ("Trimark") filed suit in the United States District Court in Minnesota against Plaintiff, Alan Karpas ("Karpas") seeking a declaratory judgment that Trimark did not owe Karpas accelerated payments under an option agreement between the parties. The Minnesota District Court dismissed Trimark's suit without prejudice when Karpas filed this suit in the Superior Court of New Jersey. Trimark then removed to this Court. Karpas' suit has two counts. Count I claims breach of contract and damages in the amount of payments and interest Trimark owes Karpas on the option agreement as of March 1, 2005, and Count II seeks acceleration of all prospective payments. Karpas now moves for partial summary judgment on Count I of his suit, for certification that the award of partial summary judgment is a final judgment, and for a post-judgment interest rate of 7.5 %. For the reasons stated below, this Court will grant Karpas' partial motion for summary judgment, will certify the award of partial summary judgment as a final judgment, and will apply the contractual interest rate of 7.5% post-judgment.

## *I. BACKGROUND FACTS*

On July 31, 2000, Karpas and two other stockholders, Richard Feinstein ("Feinstein") and Arthur Berke ("Berke"), of Rivers End Trading Company, Incorporated ("Rivers End") entered into an Option

Agreement ("Option Agreement") with Trimark. (Def.'s Opp'n Br. at 5.) They granted Trimark the option to purchase all of their shares of capital stock in Rivers End. (Id.) Karpas owned 1000 shares in Rivers End. (Pl.'s Br. at 6.) Section 2.2 of the Option Agreement provided that for Karpas's shares, Trimark would pay Karpas $100,000 plus 1.85% of the sales of Rivers End for each fiscal year from March 1, 2000 to February 29, 2004 divided by 3. (Option Agreement § 2.2). In Section 2.3, Trimark agreed that on or before March 15 of each fiscal year, beginning on March 15, 2001, it would provide Karpas with a written notice of the sales of Rivers End for the immediately preceding fiscal year, "a promissory note . . . providing for the payment of [the amount owed] payable in thirty-six (36) equal monthly installments commencing the first day of April in the relevant year, together with interest at the rate of seven point five percent (7.5%) per annum," and "a letter of credit securing in full the payment of the principal outstanding under the promissory note." (Option Agreement § 2.3.) Trimark exercised its rights under the Option Agreement to purchase the capital stock in Rivers End owned by Karpas, Feinstein, and Berke. (Karpas Aff. ¶6.)

On March 31, 2003, Karpas, Feinstein, and Berke entered into a new agreement, the "Executives Agreement," which deleted and replaced Sections 2.2-2.8 of the original Option Agreement, the

provisions relating to compensation for the shares in Rivers End. (Executives Agreement at 1.) In the Executives Agreement, Trimark agreed that the total price it would now pay for Karpas's shares in Rivers End would include: (1) $100,000 at closing, (2) $9,415.20 principal and $2,000.73 interest payable between March 1, 2002 and July 31, 2002, (3) $90,283.00 plus 7.5% per annum interest, paid according to "Schedule 14," attached to the Executives Agreement, which detailed payments on the first of each month in the amount of $2,507.85 plus 7.5% compounded interest, and (4) monthly installments of $8,333.33 from August 1, 2002 through December 31, 2008, totaling $100,000 per year. (Executives Agreement §1.) Trimark prepared and attached "Schedule #1," a "[r]ecap of payouts/[d]eductions," to the Executives Agreement. Schedule 1 detailed the payments that had already been made to Karpas. Schedule 1 also laid out a schedule of remaining monthly payments on the $90,383.00 plus interest, from May 2003 to February 2004, the final payment of which was $2,532.52. Trimark agreed in the Executives Agreement that any delinquent payments would accrue 7.5% interest per annum until Trimark paid. (Def.'s Opp'n. Br. at 5.)

Karpas contends that Trimark failed to pay the February 2004 payment of $2,532.52, and also has failed to pay the $8,333.33 monthly payments since February 1, 2004. (Karpas Aff. ¶ 11.) Karpas's counsel

4

wrote a letter to Trimark in August 2004 requesting full payment of the monies owed to Karpas at that time, (Demand Letter at 1), but Trimark continued to default on its payments, (Karpas Aff. ¶ 12). Karpas thus contends that the total amount Trimark owes him on Count I of his complaint for past-due payments is $124,106.28, which includes $119,190.28 of actual past due payments and $4,916.00 of interest. (Pl.'s Br. at 3.) Karpas now moves for partial summary judgment as to Count I of his complaint, and an order certifying the grant of summary judgment as a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure. (Id. at 3, 9.) Karpas also argues the contractual interest rate of 7.5 % should apply post-judgment as well as pre-judgment. (Pl.'s Reply Br. at 4.) Trimark filed a brief in opposition, contending that a genuine dispute of material fact remained on Count I because Karpas had failed to establish Trimark's liability for the February 2004 $2,532.52 payment. (Def.'s Opp'n Br. at 7.) Trimark also contended that this Court should not enter a separate and final judgment on Count I in any event, and that even if there were a separate and final judgment, the post-judgment interest rate should not be 7.5% but rather the statutory interest rate pursuant to New Jersey Court Civil Practice Rule 4:42-11(a). (Id. at 8, 10.) Nowhere in Trimark's brief in opposition did Trimark contend that it made the required payments to Karpas, or deny that it had failed to make them. In response to

5

Trimark's brief, Karpas cited the Executives Agreement and Schedule 14 as the basis for Trimark's liability for the $2,532.52. (Pl.'s Reply Br. at 2-3.)

## *II. DISCUSSION*

*A.    Karpas' motion for partial summary judgment*

**1.    Summary Judgment Standard**

Fed. R. Civ. P. 56(a) allows a claimant to seek summary judgment on "any part" of his claim. Summary judgment will be granted as to any part of the Plaintiff's claim if the record shows "that there is no genuine issue as to any material fact and that the [Plaintiff] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial "burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In addition, the record "must be viewed in the light most favorable to the opposing party." *Adickes,* 398 U.S. at 157. After the moving party meets its initial burden, though, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial," or else the court will grant summary judgment. Fed. R. Civ. P. 56(e). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Indeed, only if a particular factual issue "may be resolved in favor of either party," and is determinative for the outcome of the case is there a genuine issue of material fact such that the court should not

grant a motion for summary judgment. *Anderson*, 477 U.S. at 250.

**2.      Past Due Monthly Payments of $8333.33**

Karpas has clearly met his initial burden and shown an absence of a genuine issue of material fact as to Trimark's default on monthly payments of $8333.33 from February 2004 to March 2005 as required by the Executives Agreement's revision of Section 2.2(b)(iii) of the Option Agreement. (Executives Agreement §1). In response, Trimark has not presented evidence that it is free from liability nor that it paid the money it owes Karpas under the Executives Agreement, and thus it has not met its burden to "set forth specific facts showing that there is a genuine issue for trial," as required by Rule 56(e) to defeat Karpas's motion for summary judgment. Both parties also agree that they contracted for a pre-judgment interest rate of 7.5 % on these past-due payments. Therefore, there is no genuine issue of material fact necessitating a trial as to the past due payments required under the Executives Agreement's revision of Section 2.2(b)(iii) of the Option Agreement. These defaulted payments amounted to $116,666.76 as of March 1, 2005, plus interest thereon up to that date of $4,711.12. Interest is accruing to the date of judgment at the rate of $23.97 per day.

**3.      February 2004 $2,532.52 Payment**

Trimark contends that there is a genuine issue of material fact as

7

to its liability for the February 2004 payment in the amount of $2,532.52 because Karpas "does not allege any facts to show that he is entitled to payment of $2,532.52 and that Trimark breached its obligation to pay Karpas this amount." (Def.'s Opp'n Br. at 7.) To the contrary, Karpas has produced the Executives Agreement that Trimark voluntarily entered into, as well as Schedules 1 and 14 which Trimark produced. Section 1 of the Executives Agreement, which revises the Option Agreement Section 2.2(b)(ii), entitles Karpas to "$90,283.00 plus interest payable at 7.5% per annum payable in accordance with Schedule 14 attached to the," Executives Agreement. Schedule 14 clearly lays out a monthly payment plan for this money, and shows the money Trimark paid up to March 1, 2002. Schedule 1 further details the payments made up to March 31, 2003 "under 2.2(b)(ii)" and lists a schedule of the remaining payments monthly from May 2003 to February 2004, the last of which is for $2,523.52. Karpas has filed an affidavit stating that Trimark has not paid him the $2,523.52. Again, upon this evidence, it is Trimark's burden to show that there is a genuine issue of material fact about whether it owes the $2,523.52, such that the issue could be reasonably resolved for either party, to defeat summary judgment. Trimark has failed to meet this burden. Trimark does not even attempt to claim that it is not liable for this money nor that it has paid the $2,523.52, only that Karpas has not clearly identified

the basis for liability in the record. Since Karpas has properly identified the basis of liability, there is no genuine issue of material fact as to Trimark's liability for the February 2004 payment. It is required under the Executives Agreement Section 1, revised 2.2(b)(ii) of the Option Agreement.

**4.     Conclusion**

Thus, this Court will grant summary judgment on Count I since there is no genuine issue of material fact with respect to any of the damages claimed under Count I of Karpas's suit. Karpas will receive the full amount of damages claimed as to Count I, $124,106.28, plus per diem interest of $23.97 to the date judgment is entered. Thus, the remaining issues are the appropriateness of entering separate and final judgment on Count I, and the applicable post-judgment interest rate.

***B.     Separate and final judgment on Count I***

Fed. R. Civ. P. 54(b) allows courts to enter final judgment on one claim, even as other claims remain to be litigated, "upon express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Rule 54(b) "was designed to remedy the harsh effects that sometimes result from a delayed appeal in litigation presenting multiple claims." *Sussex Drug Prods. v. Kanasco, Ltd.*, 920 F.2d 1150, 1153 (3d Cir. 1990). If partial summary judgment on a claim is (1) "final" and (2) "there is no just reason for delay" of entry of

final judgment within the sound discretion of the court, taking into account the equities involved in the case and concerns of judicial administration, then Rule 54(b) certification of the partial summary judgment as a final judgment is proper. *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (1980); *Sussex Drug Prods.*, 920 F.2d at 1153.

Partial summary judgment on a single count of a multi-count complaint is not a "final" decision if the count is only one part of a single claim: "The partial adjudication of a single claim is not appealable, despite a Rule 54(b) certification." *Sussex Drug Prods.*, 920 F.2d at 1154. Thus, if Counts I and II of Karpas's complaint form a single claim against Trimark, this Court cannot certify as a final judgment the partial summary judgment regarding Count I. If, however, Count I is a distinct claim from Count II, Rule 54(b) may apply. There is no definitive test for when a count of a complaint is a distinct "claim" apart from the other counts of the complaint, such that Rule 54(b) applies. *Sussex Drug Prods.*, 920 F.2d at 1154; *Allegheny County Sanitary Auth. v. U.S.E.P.A.*, 732 F.2d 1167, 1172 (3d Cir. 1984). When a plaintiff seeks only different *types* of relief on one claim there is only one "claim" for the purposes of Rule 54(b). *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 (1976). Further, when counts are such that they could not be brought in separate suits, they form only a single claim. *Sussex Drug Prods.*, 920 F.2d at 1154. In addition, when counts are based on the same factual

10

situation, encompass the same rights violation, and relief would not differ depending on whether the plaintiff proved only one count or all of them, there is only one "claim." *Allegheny County Sanitary Auth.*, 732 F.2d at 1172-1173. When a case does not fit into any of these categories, however, the Supreme Court has retained a flexible standard: if the counts can be "certainly decided independently of each other," then they are distinct claims for the purposes of Rule 54(b). *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956).

First, this Court finds that the entry of partial summary judgment on Count I of the complaint is "final" on a claim. Counts I and II form separate claims. Clearly, the two counts here, unlike those in *Sussex Drug Products*, could be brought in two separate suits, one for the damages up to March 1, 2005, and one later for the rest of the damages. In fact, were Trimark to prevail on Count II of Karpas's complaint, and this Court were to find that the prospective payments could not be accelerated, Karpas would have to bring a suit later for the rest of his damages. Moreover, unlike *Allegheny County Sanitary Auth.*, Karpas's relief does differ depending on whether he proves one or both counts, because he is entitled to significantly less money if he proves only Count I. Though it is true that the counts are based on some of the same facts, this alone is not dispositive. *See Gerardi v. Pelullo*, 16 F.3d 1363, 1370 (3d Cir.1994) (stating "a judgment may be certified under Rule 54(b) even

11

if it rests in part on some facts involved in unadjudicated claims,"). Since Counts I and II can be "certainly decided independently of each other," they are distinct claims for the purposes of Rule 54(b). *Sears, Roebuck & Co.*, 351 U.S. 436. Therefore, because Count I is an independent claim, and this motion for partial summary judgment on Count I "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," on that claim, it is "final." *Caitlin v. U.S.*, 324 U.S. 229, 233 (1945).

Next this Court exercises its discretion and hereby makes an express determination that "there is no just reason for delay" of entry of final judgment on the partial summary judgment on Count I pursuant to Rule 54(b). The Third Circuit has identified five of some of the decisive factors that, "may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b)." *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (1975). They include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. *Allis-Chalmers Corp.*, 521 F.2d at 364.

In Karpas's case, Rule 54(b) certification would serve the underlying purposes of the Rule and would present none of the problems seemingly attendant to a faulty certification. The only issue with regard to Count II will be whether Karpas can accelerate the rest of the payments Trimark owes him and claim those damages now, and that issue is not a part of this decision, so there is no chance that further developments in this case at trial will moot the need for review on any aspect of this decision. There is thus no real danger of two separate appeals on the same issue of the same case, since the controlling issues of law are different in each count. There is no claim or counterclaim present that could be decided later such that it would offset any of the award now deemed final by this Court, since Trimark's only real contention concerns the prospective payments. In addition, Karpas deserves the money that Trimark owes him now, not after further litigation and possible appeals on issues pertaining to Count II. Delaying an entry of final judgment as to Count I would allow Trimark to use the legal system to avoid paying what it owes and to attempt to coerce a settlement from Karpas on the rest of the case by ensuring that he would still have to wait to get the income Trimark promised him and he needs.

Since in this case partial summary judgment as to Count I of Karpas's complaint is "final," and this Court has expressly determined

that there is "no just reason for delay" in entry of final judgment, this Court can and hereby does certify partial summary judgment as a final judgment under Rule 54(b).

**C.     Applicable interest rate**

New Jersey state law governs awards of interest in this case. *Zippertubing Co. v. Teleflex Inc.*, 757 F.2d 1401, 1414 (3d Cir. 1985). New Jersey Court Rule 4:42-11(a) outlines the criteria for post-judgment interest awards. Trimark argues that under Rule 4:42-11, post-judgment interest would accrue at the rate of 2% for 2004 and 1% for 2005. (Def.'s Opp'n. Br. at 11.) However, the New Jersey courts do not always apply the statutory interest rate: "When the legal rate is less than the contract rate it may be equitable to allow interest to run on the judgment at the contract rate to avoid prejudice," to the plaintiff. *Shadow Lawn Sav. Loan Ass'n v. Palmarozza*, 190 N.J. Super. 314, 318 (App. Div.1983). This is specifically provided for in Rule 4:42-11(a), which begins, "except as otherwise ordered by the court," allowing the court to order a rate of post-judgment interest different from that provided in the statute. New Jersey courts' decisions on post-judgment interest "clearly incorporate[] an equitable component." *Interchange State Bank v. Rinaldi*, 303 N.J. Super. 239, 264 (App. Div.1997) (remanding to trial court to determine whether equitable factors should dictate post-judgment interest at contractual rate where defendant would benefit from lower

interest rate). The court should take account of the parties' conduct in determining whether it is equitable to award the contractual interest rate. *See R. Jennings Mfg. Co., Inc. v. Northern Elec. Supply Co., Inc.*, 286 N.J. Super. 413, 418 (App. Div.1995). Here, this Court will apply the contractual rate of 7.5% simple interest post-judgment because equity favors doing so. Trimark has offered no reason for its breach, Karpas has attempted to collect what is owed him without suit via letter to Trimark, but Trimark has continued to default for almost a year, in the process getting Karpas's partners to agree to lesser sums of money for their shares in Rivers End than Trimark agreed to in the Executives Agreement. (Karpas Aff. ¶ 16).

Apparently Trimark believes that fulfilling its obligations in a timely fashion is unjust, contending in its opposition brief that Karpas attempts to "have his cake and eat it too," by asking for a final judgment and, as an incentive for Trimark to pay, the contractual interest rate post-judgment. Karpas's counsel responded that Karpas has "neither cake nor bread," as a result of Trimark's default. This Court agrees. Plaintiff's motion for summary judgment as to Count I, Rule 54(b) certification, and the contractual 7.5% simple interest rate post-judgment is granted.

/s/ Dickinson R. Debevoise

DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: June 13, 2005